Ezra Brudno and Rose Hess Brudno v. Commissioner.
Brudno v. Commissioner
Docket No. 107021.
United States Tax Court
1942 Tax Ct. Memo LEXIS 103; 1 T.C.M. (CCH) 26; T.C.M. (RIA) 42581; October 31, 1942
*103 Ezra Brudno, pro se. Lawrence Bloomenthal, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, J.: This proceeding is for a redetermination of an income tax deficiency of $3,149.38 for the calendar year 1938. Respondent concedes that $3,253.17 additional depreciation should be allowed as a deduction from petitioners' gross income. The petitioners concede that $800 out of the sum of $1,332.50 claimed by them as a deduction for interest may be disallowed and the respondent concedes that the balance of $532.50 may be allowed as a deduction. These concessions will be given effect in the recomputation. The only issue remaining for our determination is whether petitioners are entitled to a deduction for certain real estate taxes paid by them. Findings of Fact Petitioners are individuals residing at 2785 Edgehill Road, Cleveland, Ohio, and filed a joint income tax return on the cash basis for the year 1938 with the collector of internal revenue for the 18th district of Ohio. During the years 1923 to 1929, inclusive, petitioners constructed five apartment buildings in Cleveland and Lakewood, Ohio, at the following locations: 15000 Euclid, Cleveland 1808 *104 Stanwood, Cleveland 1392 Webb Road, Lakewood 1394 Webb Road, Lakewood 1673 Mars Avenue, Lakewood Title to these individual properties was held by the petitioners, two in the name of Ezra Brudno and three in the name of his wife. About 1929 approximately at the time of the collapse of the stock market, petitioners owed about $70,000 to various banks. This debt was unsecured and when the banks began to press for payment, petitioners borrowed $78,000 from Mrs. Hess, mother of Mrs. Brudno. In 1932 petitioners needed more money and borrowed it from Mrs. Hess. Upon the advice of counsel Mrs. Hess desired some security but she refused to accept a mortgage on petitioners' properties since this would be a second mortgage. The counsel advised petitioners to form a corporation exchanging all the property for the stock. The stock would then be hypothecated to Mrs. Hess as security for the loans previously made. The Edgewood Company, Inc., was incorporated under the laws of Ohio on or about September 22, 1932, on which date title to the following properties was transferred to this corporation: 15000 Euclid, Cleveland 1808 Stanwood, Cleveland 1392 Webb Road, Lakewood Title to the personal *105 residence of the petitioners was also transferred to the Edgewood Company. The Webb-Madison Company was organized under the laws of Ohio on or about July 25, 1933, at which date the property located at 1394 Webb Road was transferred to the corporation. All stock of both corporations was owned by petitioners. The stock of the Edgewood Company and Webb-Madison Company was hypothecated to Mrs. Hess to secure the money already loaned to petitioners. Some time prior to July 1, 1933, title to the building at 1673 Mars Avenue had been transferred under foreclosure procedure to the mortgagee. In 1937 petitioners borrowed, upon a note, sufficient money to pay the loan from Mrs. Hess. The corporations were then dissolved, on or about February 17, 1938, and the title to the apartment buildings was transferred back to petitioners as previously owned by them. On July 3, 1937, the mortgagee transferred title to 1673 Mars Avenue back to Mr. Brudno. In 1938 real estate taxes for the year 1937 were paid by petitioners on the properties as follows: 15000 Euclid, Cleveland
$1,459.00
1808 Stanwood, Cleveland
1,614.50
1394 Webb Road, Lakewood
1,771.30
1392 Webb Road, Lakewood
1,357.46
1673 Mars Avenue, Lakewood
1,437.50
* 2785 Edgehill Road, Cleveland
457.12
$8,096.88
*106 During the years 1934 to 1937, inclusive, the above properties were carried on the tax roll of Cuyahoga County, Ohio, in the names of the respective corporations. During the years 1933 to 1937, corporation income and excess profits tax returns were filed by and on behalf of the two corporations. These returns were filed by Mr. Brudno as president and reported all gross income and deductions arising from the operation of the apartment buildings. The corporations also paid franchise taxes to the State of Ohio. During the years 1933 to 1937 petitioners did not report in their individual or joint returns any of the gross income or deductions on account of the apartment buildings although they had previously done so. At no time was title to any property conveyed to Mrs. Hess. There was an understanding between the petitioners who owned all of the stock of the corporations that upon repayment to Mrs. Hess, the corporations would be dissolved. Opinion The sole issue imposed for our consideration is whether or not petitioners are entitled to a deduction for real estate taxes paid by them for the year 1937 on real *107 estate in Ohio, the title to which was not in petitioners until after April, 1937. Petitioners reported their income on the cash receipts and disbursements method of accounting and actually paid the taxes in the taxable year. Respondent contends that such taxes were not imposed upon petitioners and are not deductible by them. Ohio real estate taxes became a lien "on the day preceding the second Monday of April" in 1937. Section 5671, Page's General Ohio Code. Title to the various properties was not in the petitioners in April, 1937. Title to the Mars Avenue property was in the name of an insurance company which had previously foreclosed its mortgage thereon. There are no additional facts other than that title to this piece of property was reconveyed to Mr. Brudno on or about July 3, 1937. Title to the various other properties was held in corporations whose stock was owned wholly by petitioners. Petitioners did not receive title again to such properties until February 1938 when the corporations were dissolved. Since petitioners did not hold title to the properties at the time the lien attached they are not entitled to a deduction for taxes even though they paid them. . *108 Petitioners contend, however, that we should disregard the corporate entities since the purpose of their establishment was to hypothecate their stock to Mrs. Hess to secure a loan. They claim that transfer of title though absolute in terms was actually in the nature of a mortgage. However, title was at no time transferred to Mrs. Hess to whom petitioners owed money and we fail to see how such transfer of title could be a mortgage where the party receiving it was not the creditor. Also, petitioners contend that notwithstanding title to the real estate in question was transferred to and stood in the names of the corporations from 1932 and 1933 until in February 1938, such transfer was merely for the limited purpose of providing an acceptable security for an indebtedness owed by petitioners and that therefore the corporate entity of the corporations should be ignored for tax purposes. We can not subscribe to this view. Moreover, petitioners did not so ignore the corporate entities. The corporations were organized for a business purpose and were maintained and operated in fulfillment of such purpose. In recognition whereof the petitioners, who were the only stockholders of the corporations *109 and managing officers thereof, caused them throughout the years 1933 to 1937, inclusive, to file income, excess-profits and corporate stock tax returns. During the years 1934 to 1937, inclusive, the properties so conveyed were carried on the tax rolls in the names of such corporations. In the corporate income and excessprofits tax returns were reported the gross income derived and the deductions arising from the operation of such properties. The corporations also paid franchise taxes to the State of Ohio. During those years petitioners did not report in their returns the income and deductions from the operations of such properties. Petitioners chose to do business in corporate form. We will not now disregard the corporate entities when a burden is cast upon petitioners because of that choice. , and the cases therein cited. Decision will be entered under Rule 50. Footnotes
*. Petitioners' personal residence ($457.12 includes $25.48 specials).↩